IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

**RON L. FLIPPO,**                                              Civ. No. 3:15-cv-01278-PA

       Plaintiff,

       v.                                                       **OPINION AND**
                                             **ORDER**

**CAROLYN W. COLVIN,**
**COMMISSIONER OF SOCIAL SECURITY,**

       Defendant.

_____

PANNER, District Judge.

     Plaintiff Ron L. Flippo ("Flippo") seeks judicial review of the Social Security Commissioner's final decision denying his applications for Disability Insurance Benefits and Supplemental Security Income under Titles II and XVI of the Social Security Act. This Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c). The Commissioner's decision is reversed and remanded for further proceedings.

///

///

///

Page 1 – OPINION & ORDER

## BACKGROUND

Born in 1966, Mr. Flippo has a ninth-grade education and minimal literacy. Admin. R. 148, 33-34. He alleges disability since August 2009 (*id.* at 148) due to morbid obesity, back, knee, and foot pain, diabetes and diabetic complications, and high blood pressure. *Id.* at 74, 166.

The Commissioner makes disability determinations under the Act using a regulatory five-step analysis. 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4); *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011) (citing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

An Administrative Law Judge ("ALJ") found Mr. Flippo not disabled on February 28, 2014. Admin. R. 7-21. The Commissioner's Appeals Council denied review of the matter. *Id.* at 1-3. The ALJ's decision is therefore final and subject to review by this court. 20 C.F.R. § 410.670a.

## STANDARD OF REVIEW

This court must affirm the ALJ's decision if it is based on proper legal standards and supported by substantial evidence. 42 U.S.C. § 405(g); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015). "Substantial evidence" means "more than a scintilla but less than preponderance." It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garrison v. Colvin*, 759 F.3d 995, 1009 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1029, 1035 (9th Cir. 2007)). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *Id.* at 1010 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum

of evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 446 F.3d 880, 882 (9th Cir. 2006)); *see also Garrison*, 759 F.3d at 1009-10. Finally, the reviewing may not affirm the Commissioner on grounds upon which the Commissioner did not rely. *Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014) (citing *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003)); *see* also *Brown-Hunter v. Colvin*, 806 F.3d 487, 1133, 1138 (9th Cir. 2015).

## ANALYSIS

Mr. Flippo asserts that the ALJ: (1) improperly discredited his testimony and that of his mother; (2) erroneously evaluated his treating physician's opinion; (3) erroneously evaluated his carpal tunnel syndrome and obesity; (4) erroneously assessed his "residual functional capacity" describing his workplace abilities under the Commissioner's regulations; and (5) at step five in the sequential process, the ALJ should have found him disabled.

### A. Claimant's Testimony

#### 1. Credibility Standards

Under the Commissioner's regulations, the ALJ must consider a claimant's statements regarding his symptoms. 20 C.F.R. §§ 404.1529(a); 416.929(a). This analysis is individualized, but pain and functional limitation must be related to a medically determinable impairment. 20 C.F.R. §§ 404.1529; 416.929.

The Ninth Circuit consequently directs a two-step process in evaluating a claimant's testimony. First, the ALJ must determine "whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036. Here, the claimant need only show that the impairment "could reasonably have caused some degree of the symptom." *Smolen v.*

Page 3 – OPINION & ORDER

*Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996); *reaff'd by Brown-Hunter*, 806 F.3d at 493. Second,

absent evidence of malingering, the ALJ may reject a claimant's testimony to the severity of his

symptoms only by offering "specific, clear and convincing reasons for doing so." *Id.*;

*Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). Such findings must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell v. Sullivan*, 947 F.3d 341, 345-46 (9th Cir. 1991) *(en banc)); see also Brown-Hunter*, 806

F.3d at 493.

Mr. Flippo broadly avers that the ALJ's findings were not based upon substantial

evidence, and pointing to the ALJ's characterization of his daily activities and medical record.

Pl.'s Br. 18. The ALJ found Mr. Flippo's symptom testimony "not entirely credible" (Admin. R.

15), citing his failure to stop smoking, failure to lose weight, activities of daily living and

recreational activities, and medical record. *Id.* at 15-18.

## 2.  Failure to Follow Treatment

The Commissioner instructs that a claimant must follow recommended treatment that

would restore workplace ability.    20 C.F.R. §§ 404.1530(a); 416.930(a).    In assessing a

claimant's credibility, an ALJ may properly rely upon "unexplained or inadequately explained

failure to seek treatment or to follow prescribed treatment." *Molina v. Astrue*, 674 F.3d 1104,

1113 (9th Cir. 2012) *(quoting Tommasetti v. Astrue*, 553 F.3d 1035, 1039 (9th Cir. 2008)).

### a.  Inability to Afford Treatment

The Commissioner asserts that Mr. Flippo failed to follow up in obtaining diabetic

treatment and taking prescribed medications. Def.'s Br. 7. The record repeatedly shows that Mr.

Flippo did not have health insurance, could not afford treatment, and could not afford

Page 4 – OPINION & ORDER

medications. *E.g.* Admin. R. 294, 303, 311. The ALJ may not rely upon a claimant's failure to

seek treatment if he cannot afford it. *Orn v. Astrue*, 495 F.3d 625, 638 (9ᵗʰ Cir. 2007) (citing

*Gamble v. Chater*, 68 F.3d 319, 321 (9ᵗʰ Cir. 1995)). This argument is not based upon the record

or applicable legal standards, and therefore fails.

### b.  Smoking Cessation

An ALJ's citation to smoking must connect a claimant's failure to cease smoking to a

finding that the claimant could return to work but for this failure. *Byrnes v. Shalala*, 60 F.3d

639, 641 (9ᵗʰ Cir. 1995). The ALJ repeatedly cited Mr. Flippo's failure to quit smoking (Admin.

R. 15,17, 18), but made no such identifiable finding. The ALJ's citation to this behavior is

therefore not sustained.

### c.  Failure to Lose Weight

The Commissioner instructs that a claimant cannot be found to have failed to follow

treatment related to obesity without a prior finding that the claimant is disabled due to obesity.

Soc. Sec. Ruling 02-1p, *available at* 2002 WL 34686281 at *9. This is because obesity is a

"complex, chronic disease" resulting from a "combination of factors," and "treatment for obesity

is often unsuccessful." *Id.* at *2. A treating physician's "statement that an individual 'should'

lose weight or 'has been advised' to get more exercise is not prescribed treatment" under the

Commissioner's regulations. *Orn*, 495 F.3d at 637.

The ALJ's error is trifold. The ALJ (1) repeatedly found that Mr. Flippo failed to follow

dietary and lifestyle recommendations pertaining to his obesity, (2) used this reasoning to reject

Mr. Flippo's testimony addressing symptoms related to his obesity, and (3) subsequently found

Mr. Flippo not disabled due to obesity alone or in combination with any other impairment. This

reasoning begins with a finding that Mr. Flippo failed to follow instructions to lose weight,

which is directly contrary to the Commissioner's instruction. The resulting negative credibility inference is not sustained.

### 3. Activities of Daily Living

The ALJ's credibility analysis may cite activities of daily living in conjunction with other factors such as frequency and intensity of reported symptoms, medication and its effects, and treatment utilized. 20 C.F.R. §§ 404.1529(c)(3); 416.929(c)(3). Inconsistencies between testimony and reported activities may support an adverse credibility determination. *Molina*, 674 F.3d at 1112; *Burrell v. Colvin*, 775 F.3d 1133, 1137 (9th Cir. 2014) (citing *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997)). But, such reasons must be "sufficiently specific to permit the reviewing court that the ALJ did not arbitrarily discredit the claimant's testimony," *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993), and the ALJ must make "specific findings relating to the daily activities" and their transferability to a work environment. *Orn*, 459 F.3d at 639; *see* also *Molina*, 674 F.3d at 1113. Where an ALJ's analysis is subject to more than one plausible interpretation, the reviewing court must affirm the ALJ's findings if they are reasonable and supported by substantial evidence. *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001).

Mr. Flippo specifically challenges the ALJ's citation to his fishing trips. Pl.'s Br. 6, 7, 8, 18. Although the ALJ may have grossly inferred that boarding a fishing boat is transferable to workplace postural changes, he made no identifiable and specific finding on the matter. The inference is therefore not sustained.

The ALJ also cited Mr. Flippo's activities of daily living, including performance of limited household chores, shopping, and meal preparation. Admin. R. 15-16, 18. The ALJ discussed first these activities in direct relation to Mr. Flippo's alleged limitations stemming

from his obesity. *Id.* As noted, the ALJ's citation to Mr. Flippo's obesity in his credibility determination is not sustained.

The ALJ also relied upon Mr. Flippo's daily activities in rejecting his symptom testimony describing hand and foot pain, weakness, and numbness due to diabetic neuropathy. Admin. R. 16. The ALJ infers that Mr. Flippo's ability to perform limited household shopping and wash dishes contradicts this allegation of workplace limitation. *Id.* This inference is weak. While the reviewing court must affirm reasonable inferences, *Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004), the record does not support this finding.

The ALJ finally cited Mr. Flippo's daily activities in a generalized manner, without reference to any workplace limitations. Admin. R. 18. Such citation to minimal completion of household chores and shopping do not, on their own, contradict allegations of disability. *Orn*, 459 F.3d at 639; *see* also *Molina*, 674 F.3d at 1113. The ALJ's citation is insufficient.

### 4. Medical Record

The ALJ's credibility analysis may cite a claimant's medical record in concert with other factors. 20 C.F.R. §§ 404.1529(a); 416.929(a). The ALJ may not, however, reject a claimant's symptom testimony "solely because" medical evidence does not corroborate the degree of alleged pain or limitation. *Robbins*, 466 F.3d at 883. The ALJ's additional reasons for rejecting Mr. Flippo's testimony are not sustained for the reasons above. Therefore, this Court cannot now sustain the ALJ's rejection of Mr. Flippo's testimony based upon citations to the medical record alone.

### 5. Credibility Conclusion

In summary, the ALJ must provide "clear and convincing" reasons for rejecting a claimant's symptom testimony. *Brown-Hunter*, 806 F.3d at 493. Isolated references to Mr.

Page 7 – OPINION & ORDER

Flippo's daily activities do not establish adequate basis for rejecting Mr. Flippo's symptom testimony. The ALJ's credibility analysis is therefore not sustained.

### B. Lay Testimony

#### 1. Lay Testimony Standards

The ALJ must give "germane" reasons for rejecting lay testimony. *Dale v. Colvin, Comm'r Soc. Sec.*, 823 F.3d 941, 943 (9th Cir. 2016); *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). The ALJ and may reject lay testimony to the extent it is consistent with similar testimony properly rejected, *Molina*, 674 F.3d at 1114, but such analysis must apply to commensurate portions of testimony. *Dale*, 823 F.3d at 945-46. Discrediting a lay witness's entire testimony on the basis of reasoning applying to only a portion of it is erroneous. *Id.* at 946.

#### 2. Ms. Flippo's Testimony

Mr. Flippo's mother, Etheleen Flippo, submitted an observational report to the record stating that Mr. Flippo cannot maintain activity for more than fifteen to twenty minutes, experiences drowsiness from his medication, and performs various household chores and activities "a couple of times a week." Admin. R. 194-96. She also stated that he has difficulty maintaining personal hygiene, and struggles to prepare healthy meals with his available funds. *Id.* at 195-96. Regarding Mr. Flippo's recreational activities, she stated that he fishes "2-4 times a year. " *Id.* at 198. Ms. Flippo endorsed limitations in Mr. Flippo's ability to lift more than twenty pounds and in squatting, bending, standing, reaching, walking, kneeling, stair climbing, completing tasks, and using his hands. *Id.* at 199. Finally, she stated that Mr. Flippo is able to follow spoken instructions, gets along with authority figures "for the most part ok," and does not handle stress "very well [sic] gets argumentative." *Id.* at 200.

The ALJ accorded Ms. Flippo's testimony "some" weight, finding "not consistent with her own observations" and contradicted by the medical record. Admin. R. 18. The Court finds no internal inconsistency in Ms. Flippo's statements, and this reasoning is not sustained.

The ALJ specifically cited imaging studies of Mr. Flippo's back and feet. *Id.* The record shows that Mr. Flippo's physicians assessed back pain throughout the period under review. Admin. R. 271, 272, 275, 282, 368, 414. Following a normal foot x-ray, Mr. Flippo received a podiatrist referral due to foot issues stemming from his diabetes and obesity. The podiatrist stated Mr. Flippo's risk was such that he required ongoing rather than acute foot care. *Id.* at 346-47. Other chart notes show diabetic foot ulcers and ongoing foot pain. *Id.* at 408, 414. The ALJ's citation to imaging studies pertaining to these impairments is therefore incomplete and does not suffice to reject Ms. Flippo's testimony.

### C. Physician Opinions

Mr. Flippo challenges the ALJ's evaluation of his treating physician's opinion.

#### 1. Treating Physician Standards

Disability determinations are reserved for the Commissioner. 20 C.F.R. §§ 404.1503; 416.923. However, the ALJ must give clear and convincing reasons for rejecting the uncontradicted opinion of a treating physician, and specific and legitimate reasons for rejecting a treating physician's contradicted opinion. *Garrison*, 759 F.3d at 1012; *see also Orn*, 495 F.3d at 623. The ALJ may consider medical specialty, nature and extent of treating relationship, supporting evidence, consistency, and other factors. *Id.* at n. 11; 20 C.F.R. §§ 404.1527(c)(2-6); 416.927(c)(2-6).

///

///

### 2.  Dr. Mendez's Opinion

Internist Dr. Mendez and her associates at Willamette Family Medical Center provided primary care for Mr. Flippo between September 2007 and November 2013, when the record closes.  Admin. R. 271-337, 350-53, 403-16. 422-426. On November 26, 2013, Dr. Mendez completed a "functional capacity assessment" opinion, and submitted an associated letter to the record.  Admin. R. 423-26.  She endorsed limitation in Mr. Flippo's ability to sit more than six hours in an eight hour workday, with associated limitation in standing.  *Id.* at 323.  She also stated he cannot lift or carry more than twenty pounds on more than an occasional basis, and may frequently lift or carry ten pounds.  *Id.* at 424.  Dr. Mendez affirmed that Mr. Flippo should never climb ramps, ladders, or scaffolding, and may "rarely" balance, kneel, crouch, crawl, or stoop.  *Id.*  She endorsed "occasional" handling, fingering, and feeling objects, and "rare" reaching in all directions because these postures are "possibly secondary to osteoarthritis and bilateral carpal tunnel syndrome."  *Id.* at 425.  She additionally endorsed limited visual acuity, explaining this "may be secondary to diabetic retinopathy, [sic] repeat eye exam is pending."  *Id.* at 425. The record consistently states that Mr. Flippo told providers he could not obtain the eye exam because he did not have funds to pay for it.  *Id.* at 303, 311.

Dr. Mendez submitted a concurrent letter to the record stating Mr. Flippo's clinical diagnoses of morbid obesity, chronic back pain, severe obstructive sleep apnea, high blood pressure, diabetes, diabetic neuropathy, and bilateral carpal tunnel syndrome.  *Id.* at 422.  Dr. Mendez stated that Mr. Flippo experiences fatigue secondary to his morbid obesity, but his pain is "minimal to moderate and does not interfere with his regular activities." *Id.* at 422.

The ALJ reiterated Dr. Mendez's November 26, 2013 "functional capacity assessment" opinion in some detail, giving it "little" weight because it contradicted Mr. Flippo's reported

activities. *Id.* at 17. The ALJ's analysis of Mr. Flippo's daily activities is not sustained for the reasons above. The ALJ's analysis of Dr. Mendez's opinion and her indicated limitations consequently are not sustained.

### D. The ALJ's Evaluation of Specific Impairments

#### 1. Carpal Tunnel Syndrome

Mr. Flippo challenges the ALJ's finding that his carpal tunnel syndrome was non-severe at step two in the sequential evaluation. Pl.'s Br. 16. Step two analysis requires only that the claimant show a medically determinable impairment that, in combination with other impairments, significantly limits his ability to perform workplace activities. 20 C.F.R. §§ 404.1520(a)(4)(ii) and (c); 416.920(a)(4)(ii) and (c). Such impairment must last at least twelve months. 20 C.F.R. §§ 404.1509; 416.909. The step two inquiry is a "threshold inquiry" *Bowen v. Yuckert*, 482 U.S. 137, 153 (1987), and omissions are harmless if the ALJ's subsequent evaluation considered the impairment's effects. *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007).

The ALJ stated, "there is no evidence [Mr. Flippo] ever followed up with a nerve conduction test to have this impairment properly diagnosed." Admin. R. 13. The ALJ's indicated citation shows that nurse practitioner Kathleen Krail assessed carpal tunnel syndrome in September 2012. *Id.* at 271. Ms. Krail stated that Mr. Flippo presented with hand numbness and tingling "present for years" and worsening left wrist pain. *Id.* She also noted Mr. Flippo's history of repeated wrist fractures, and report that computer use worsened the pain, he had intermittent poor hand grip strength, and symptoms occasionally awaken him at night. *Id.* Ms. Krail stated that the Oregon Health Plan would not pay for surgery and "he has never been tested for carpal

tunnel." *Id.* Her treatment plan directed an x-ray of Mr. Flippo's wrist and "consider referral for EMG/NTS testing." *Id.* at 272.

This citation does not establish that Mr. Flippo was medically ordered to obtain nerve testing, had opportunity to obtain it, or refused to do so. The ALJ's reasoning addressing sufficiency of the diagnosis is not based on the record and is not sustained. Step two errors are harmless only when ALJ considers the effect of omitted impairment at a later stage in his analysis. *Lewis*, 498 F.3d at 911. The ALJ's subsequent analysis of Mr. Flippo's alleged carpal tunnel syndrome limitations is based upon improper rejection of Mr. Flippo's testimony. The ALJ's findings are therefore not sustained.

### 2. Obesity

The ALJ must consider all impairments in combination, including those both "severe" and "nonsevere." 20 C.F.R. §§ 404.1520(a)(4)(iii); 404.1523; 416.920(a)(4)(iii); 416.923. As noted, the Commissioner instructs that obesity may "meet" a listing in combination with other impairments. Soc. Sec. Ruling 02-1p, *available at* 2002 WL 34686281 at *5; *Orn*, 495 F.3d at 636-38; *see* also *Celaya v. Halter*, 332 F.3d 1777, 1181-1183 (9th Cir. 2003). Obesity analysis does not require specific body mass index ("BMI"). SSR 02-1p at *4. Instead, the ALJ must consider whether obesity increases the severity of coexisting impairments, with particular attention paid to musculoskeletal, respiratory, and cardiovascular impairments, and ambulatory limitations. *Id.* at *5.

The clearly record shows that Mr. Flippo was morbidly obese throughout the period under review. Medical providers noted Mr. Flippo's obesity as his primary health concern, and nearly all treatment notes address related conditions such as diabetes with neuropathy and vision complications, knee and back pain, sleep apnea, and respiratory issues.

The ALJ found Mr. Flippo's obesity "severe" at step two in the sequential disability findings, without analysis, and stated that he considered its effects in assessing Mr. Flippo's residual functional capacity. Admin. R. 12, 14. The ALJ's subsequent obesity findings and analysis were limited to repeated discussion of Mr. Flippo's failure to follow dietary and exercise recommendations. Admin. R. 15, 16, 18. The ALJ made no further finding regarding the effects of Mr. Flippo's established obesity. This analysis did not consider the effects of Mr. Flippo's obesity in relation to his numerous concurrent impairments. This is contrary to the Commissioner's instructions, and is not sustained.

### E. Residual Functional Capacity and Step Five Findings

As a result of the errors above, Mr. Flippo asserts that the ALJ's Residual Functional Capacity ("RFC") formulation was incomplete, and that his finding that he could perform work existing in the national economy was consequently erroneous. Pl.'s Op. Br. 11.

The ALJ's RFC assessment is a statement describing a claimant's abilities in a work setting following analysis of the evidence of record under the standards discussed above. 20 C.F.R. §§ 404.1545; 416.945. It represents the most a claimant can do despite his limitations. 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

At step five in the sequential proceedings, the ALJ determines whether the claimant can perform work existing in the national economy in significant numbers. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). Here the ALJ may draw upon a vocational expert's testimony to show that a claimant can perform such work. 20 C.F.R. §§ 404.1566(d)-(e); 416.966(d)-(e). The ALJ's question's to the vocational expert must include all properly-supported limitations. *Osenbrock v. Apfel*, 240 F.3d 1157, 1665-66 (9th Cir. 2001). Because the

ALJ failed to properly formulate the RFC, the subsequent findings at steps four and five of the sequential proceedings are not sustained.

## REMAND

The ALJ erroneously evaluated Mr. Flippo's testimony and that of Ms. Flippo, as well as Dr. Mendez's opinion and the evidence pertaining to Mr. Flippo's carpal tunnel and obesity impairments.

The reviewing court may "affirm, modify, or reverse" the Commissioner's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g), sentence four. The Court has discretion to determine remand parameters. *Dominiguez v. Colvin*, 808 F.3d 403, 407 (9th Cir. 2015); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000), *cert. denied*, 513 U.S. 1038 (2000). The "ordinary remand" rule instructs that the proper course is, generally, to remand to the agency for additional proceedings. *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). Remand for award of benefits is inappropriate unless further administrative proceedings would serve no useful purpose. *Dominiguez*, 808 F.3d at 407.

Mr. Flippo asks this court to credit Dr. Mendoza's opinion (Pl. Br. 19), but does not point to specific evidence that, if credited, would establish specific limitations directing a finding of disability under the Commissioner's regulations. In such circumstances, the proper remedy is to remand the matter to the Commissioner for further proceedings.

## CONCLUSION

For these reasons, the Court REVERSES the Commissioner's final decision and REMANDS the matter for further proceedings pursuant to 42 U.S.C. § 405(g) sentence four. Further proceedings must address the indicated testimonial and medical evidence above, and

correctly assess Mr. Flippo's obesity and related diabetic, musculoskeletal, and respiratory impairments.

IT IS SO ORDERED.

DATED this ___21___ day of September, 2016.

OWEN M. PANNER
United States District Judge